```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
GERARD GRIM,                              :
                                          :
         Plaintiff,                       :   CASE NO. 1:15-CV-1074
                                          :
vs.                                       :
                                          :   OPINION AND ORDER
BETHESDA LUTHERAN                         :   [Resolving Doc. 16]
COMMUNITIES, INC.,                        :
                                          :
         Defendant.                       :
                                          :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Bethesda Lutheran Communities, Inc. ("Bethesda") moves for summary judgment on former employee Gerard Grim's Age Discrimination in Employment Act[1] ("ADEA") claim.[2] Plaintiff Grim claims that Bethesda fired him due to his age—he was 66 at the time Bethesda fired him.[3] Bethesda argues that it fired Grim because of Grim's underperformance in his Bethesda fundraising position. For the following reasons, this Court **GRANTS** in part and **DENIES** in part Defendant Bethesda's motion for summary judgment.

## I. Background

In February 2011, Bethesda, a charitable organization, hired Grim as a Mission Advancement Director.[4] Grim was 63 when Bethesda hired him.[5] Grim's job was to solicit potential donors and secure charitable gifts of at least $25,000 in thirteen states.[6] Before starting

---

[1] 29 U.S.C. § 621 et seq.
[2] Doc. 16. Plaintiff opposes. Doc. 18. Defendant replies. Doc. 19.
[3] See Doc. 18-3 at 2.
[4] Doc. 16-2 at 17–18.
[5] See Doc. 18-3 at 2.
[6] Doc. 16-2 at 10, 18.

Case No. 1:15-cv-1074
Gwin, J.

at Bethesda, Grim worked a number of fundraising jobs for educational and religious institutions.[7]

Bethesda generally employs six fundraisers at any given time.[8] Bethesda measures fundraiser performance by the dollar amount of the gifts and the number of face-to-face visits with donors each month.[9] Bethesda expected its fundraisers to secure several hundred thousand dollars' worth of gifts for each September-through-August fiscal year and to make around 20 face-to-face visits every month.[10] Bethesda's policy threatened corrective action if the fundraisers did not secure their set goal for gifts or if their monthly face-to-face visit rates fell below 16.[11]

Several of Bethesda's fundraisers, including Grim, frequently underperformed against their yearly gift and visit goals.[12] In the first five months of fiscal year 2014—starting September 2013—Grim secured $6,000 in gifts, despite a yearly goal of $500,000.[13] In that same time period, Grim averaged 1.2 "actionable" visits per month, despite a monthly goal of 20 visits.[14]

Starting in August 2013, Charles Werth—Grim's direct supervisor—and Bethesda CEO Dr. John Bauer exchanged emails regarding terminating Grim's employment. In August 2013, Supervisor Werth wrote to Dr. Bauer,

> Gerry Grim is bad enough, but having two "used-to-bes" in a team meeting is a dream killer. In short, I plan to let the Principal Gifts Team slide quietly into the deep as we build a much more robust team of Major Gifts Officers who truly know how to use the senior members of the team.[15]

---

[7] Doc. 16-2 at 83.
[8] *See* Doc. 18-7.
[9] *Id.*; Doc. 16-2 at 101–02.
[10] Doc. 16-2 at 101–02.
[11] *Id.*
[12] *See* Doc. 18-7 at 2–4.
[13] Doc. 16-2 at 101, 110.
[14] *Id.* at 102, 111–14.
[15] Doc. 18-4 at 2.

Case No. 1:15-cv-1074
Gwin, J.

In a fiscal year 2013 assessment of Grim, a Bethesda employee wrote, "Gerry [Grim] appears to lack the gumption to orchestrate his own activities and is much more comfortable and enthusiastic working as a team contributor."[16] The same assessment said, "[w]hen Gerry [Grim] was hired he made it very clear he was only looking for employment for several years until he could retire. I think this goal has encompassed his overall attitude towards the job."[17]

On January 24, 2014, Bethesda terminated Grim, citing his "unacceptable performance" for fiscal years 2013 and 2014.[18] Bethesda redistributed Grim's sales territories to two younger fundraisers.[19]

On May 28, 2015, Grim filed the complaint in this case, bringing ADEA and Ohio age discrimination claims.[20] On December 21, 2015, Defendant Bethesda moved for summary judgment on both claims.[21] On January 12, 2016, Grim conceded that this Court should dismiss his Ohio age discrimination claims, but argued that his ADEA claims should proceed.[22] This Court therefore **GRANTS** Bethesda's motion for summary judgment as to Grim's Ohio age discrimination claim.

With his opposition, Grim argues that his performance at Bethesda was much higher than Bethesda's characterization. Grim says that he secured a fiscal year 2012 $425,000 donor gift.[23] For fiscal year 2013, Grim argues that he secured a $850,000 estate gift, well in excess of his performance goal.[24] For fiscal year 2014, Grim says that he was working on over $1.1 million in

---

[16] Doc. 18-6 at 2.
[17] *Id.* at 3.
[18] Doc. 16-3 at 3.
[19] Doc. 18-3 at 3.
[20] Doc. 1.
[21] Doc. 16.
[22] Doc. 18, n. 21.
[23] *See* Doc. 16-2 at 39–40.
[24] Doc. 18, n. 11.

-3-

Case No. 1:15-cv-1074
Gwin, J.

gifts at the time Bethesda terminated him.[25] As for monthly visits, Grim argues that he was never given clear direction on what counts as an "actionable" visit towards his 20 visit-per-month goal.[26]

In response, Bethesda argues that Grim was improperly credited with both the $425,000 gift and the $850,000 estate gift, and that there was no evidence of $1.1 million in gifts for the remainder of fiscal year 2014.[27] Specifically, Bethesda says that Grim should not be credited with the $425,000 gift because Grim secured that gift with another Bethesda employee's help.[28] Bethesda also says that it improperly credited Grim with the $850,000 estate gift since that gift was written into the donor's will years before Bethesda hired Grim, meaning that Grim did not secure the $850,000 bequest.[29]

Regarding Grim's monthly face-to-face visitation rate, Bethesda says that it informed Grim of the definition of "actionable,"[30] and that even if Bethesda were to treat every visit that Grim recorded as "actionable," Grim's rate would still be far below the 16 visit corrective action level set in their policy.[31]

Several of Grim's younger coworkers also frequently failed to satisfy their targets. Bethesda fired deShauna Jones for underperformance on the same day as Grim.[32] Bethesda fired several other employees or pressured them into quitting both before and after Bethesda fired Grim. Others voluntarily left for different jobs.[33]

---

[25] Doc. 18-18 at 4–5.
[26] Doc. 18, n. 15.
[27] Doc. 19 at 12–14.
[28] Doc. 16-1 at 10.
[29] Doc. 19 at 10–11.
[30] Doc. 19 at 9; Doc. 19-1 at 8. However, the email Bethesda cites to support this contention is dated January 9, 2014, fifteen days before Bethesda fired Grim. This is not enough time for Bethesda to inform Grim of the definition of "actionable" before his termination.
[31] *See* Doc. 18-7 at 2.
[32] Doc. 16-3 at 3.
[33] *See id.* at 5.

Case No. 1:15-cv-1074
Gwin, J.

## II. Standard of Review

**Summary Judgment**

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[34] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[35] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[36] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[37] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[38]

**ADEA Claims**

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privilege of employment, because of such individual's age."[39] To succeed on an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[40]

Direct evidence of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[41]

---

[34] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[36] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[37] *Id.* at 586.
[38] *Killion*, 761 F.3d at 580 (internal citation omitted).
[39] 29 U.S.C. § 623(a)(1).
[40] *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009).
[41] *Hughey v. CVS Caremark Corp.*, No. 15-5114, 2015 WL 6123550, at *2 (6th Cir. Oct. 16, 2015) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)).

Case No. 1:15-cv-1074
Gwin, J.

Once an employee establishes some direct evidence of discrimination, the burden falls to the employer to show that it would have made the same adverse employment decision regardless of the alleged bias.[42]

Alternatively, an employee can make out an ADEA claim using circumstantial evidence. Courts analyze circumstantial evidence cases under the *McDonnell Douglas* burden-shifting framework.[43] Under this standard, the plaintiff must provide circumstantial evidence from which a jury could draw an inference of discrimination.[44] However, "mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination."[45]

The plaintiff bears the burden of establishing a prima facie case of discrimination by the employer with proof that he (1) is a member of a protected group; (2) was subject to an adverse employment decision; (3) was qualified for the position;[46] and (4) was replaced by a person outside of the protected class.[47]

A plaintiff can satisfy the fourth prong of the prima facie case in two ways. First, a plaintiff can show that his employer replaced him with someone outside of the protected class. Second, a plaintiff may show that the employer treated a similarly-situated employee outside of the protected class more favorably than the plaintiff.[48]

---

[42] *Wexler*, 317 F.3d at 571.
[43] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).
[44] *Hughey*, 2015 WL 6123550, at *2.
[45] *Grizzell v. City of Columbus*, 461 F.3d 711, 724 (6th Cir. 2006).
[46] *Wexler*, 317 F.3d at 575–76 ("The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."); *id.* at 574 ("[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.").
[47] *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).
[48] *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

Case No. 1:15-cv-1074
Gwin, J.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.[49] If the defendant describes such a reason, the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext.[50]

A plaintiff can demonstrate that the employer's proffered reason is pretext by showing that the reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."[51]

### III. Discussion

**Direct Evidence**

Plaintiff Grim provides enough direct evidence for a reasonable jury to find that Bethesda discriminated against Grim on the basis of his age. Werth, a decision maker in Grim's termination, called Grim a "used-to-be" and implied that he was not "robust" in an email to Dr. Bauer on the issue of Grim's employment at Bethesda.[52] Grim's fiscal year 2013 performance review said that Grim lacked "gumption" and that his closeness to retirement age hurt his job performance.[53] These statements constitute more than "a scintilla of evidence in support of the plaintiff's position."[54]

As discussed below on the issue of pretext, Bethesda cannot show that it would have terminated Grim despite the alleged age discrimination. Bethesda retained other, younger fundraisers despite their poor job performances when it terminated Grim. Therefore, summary judgment on Grim's ADEA claim is not appropriate.

---

[49] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).
[50] *Id.* at 254–56.
[51] *Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 663 (6th Cir. 2010).
[52] Doc. 18-4 at 2.
[53] Doc. 18-6 at 2–3.
[54] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

-7-

Case No. 1:15-cv-1074
Gwin, J.

**Circumstantial Evidence**

*Prima Facie Case*

Plaintiff Grim makes out a prima facie case of age discrimination in his termination. Because Grim was 66 years old at the time of his termination, he is a member of a protected class of people over 40 years old.[55] His termination was an adverse employment decision. Given his many years in fundraising for various educational and religious institutions before joining Bethesda, Grim was qualified for his position at Bethesda. Grim satisfies the first three prongs of his prima facie case.

Grim also satisfies the fourth prong of his prima facie case. Bethesda gave 70 percent of Grim's sales territory to John Nickels and the remaining 30 percent to Misty Wick.[56] Nickels and Wick were outside of the protected class. Plaintiff can still satisfy the direct replacement prong despite the fact that Bethesda divided Grim's work between two younger people as opposed to giving all of Grim's work to one younger person.

Alternatively, Grim presents evidence that Bethesda treated similarly-situated employees more favorably than Grim. Though Bethesda terminated another younger coworker, deShauna Jones, on the same day that Grim was fired, Bethesda also kept two younger employees—Katey Higgins and Karen Price—who consistently failed to meet their performance goals in fiscal years 2013 and 2014.[57] Price later voluntarily left Bethesda for another job, and Bethesda did not pressure Higgins to quit until several months after Bethesda terminated Grim.[58]

*Bethesda's Legitimate, Non-Discriminatory Reasons For Termination.*

---

[55] *Mitchell*, 389 F.3d at 181.
[56] Doc. 18-3 at 3.
[57] The two remaining fundraisers, Cindy Cummings and Dennis Vanden Heuvel, appear to have performed at a higher level than any of the other fundraisers. *See* Doc. 18-7. Therefore, Cummings and Vanden Heuvel are not similarly-situated employees for the purposes of Grim's prima facie case.
[58] *See* Doc. 16-3 at 3, 5.

Case No. 1:15-cv-1074
Gwin, J.

Bethesda articulates two legitimate, non-discriminatory reasons for terminating Grim. The first is Grim's failure to meet his fundraising goals in fiscal years 2013 and 2014. Bethesda makes some argument that it improperly credited Grim with securing the $850,000 estate gift. Bethesda learned about the bequest more than ten years before Grim joined Bethesda. There is little evidence to suggest that the bequest was ever in jeopardy of not being distributed to Bethesda.[59] Grim was not responsible for securing the gift in the first place. Without that $850,000 gift, Grim did not meet his fiscal year 2013 fundraising goals.

As for fiscal year 2014, although Bethesda terminated Grim five months into the fiscal year, Grim had only secured $6,000 in gifts and did not indicate to his supervisors that he was developing any more substantial potential gifts until after he was fired.[60] Bethesda could rely on Grim's low fiscal year 2014 job performance in combination with Grim's previous performance numbers to terminate Grim.

Second, Grim consistently missed his target of 20 face-to-face visits per month. He also consistently made less than 16 visits per month despite knowing that making fewer than 16 visits could merit "corrective action." Grim had fewer than 16 recorded visits in each of his final 16 months with Bethesda. In the first five months of fiscal year 2014, Grim averaged 1.2 "actionable" visits per month.[61] These visitation rates are a legitimate, non-discriminatory basis on which Bethesda could have terminated Grim.

*Pretext*

Grim presents enough evidence to rebut Bethesda's proffered reasons for terminating Grim. First, as discussed above, some of the language in Werth's January 22, 2014 email and in

---

[59] *See* Doc. 19-1 at 1–2, 12.
[60] *See* Doc. 19-1 at 3–4. Grim made two of the four donor entries on January 24, 2014, the day Bethesda terminated him and two days after the email exchange in which Werth and Dr. Bauer decided to terminate Grim. The other two entries, from November and December 2013, do not contain precise gift figures above $10,000.
[61] Doc. 16-2 at 110–14.

-9-

Case No. 1:15-cv-1074
Gwin, J.

Grim's fiscal year 2013 performance evaluation suggests age-related bias. Second, Bethesda retained some of its younger fundraisers even though they did not meet performance expectations.[62] Third, Werth and other supervisors seemed to know that they would need to come up with a legitimate reason for firing Grim in order for the termination to "hold up against a challenge."[63] These could cause a jury to conclude that Bethesda used Grim's underperformance as a pretext for firing him due to his age or closeness to retirement.

Because Grim has made out a prima facie case of age discrimination and raised questions of material fact as to whether Bethesda's proffered non-discriminatory reasons for termination are pretext, summary judgment on Grim's ADEA claim is not appropriate. This Court therefore **DENIES** Bethesda's motion for summary judgment as to the ADEA claim.

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS** in part and **DENIES** in part Defendant Bethesda's motion for summary judgment.

IT IS SO ORDERED.

Dated: February 3, 2016
                                                *s/       James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[62] Doc. 18-4 at 3.
[63] *Id*. On January 22, 2014, two days before Bethesda fired Grim, Werth said in an email, "[the p]roblem is we have other development directors who haven't met their goals either, but we are keeping them on because we see them improving. Documenting one more time their failure to improve is the nail in the coffin. It's not about PC sensitivities, it is about having a defensible and demonstrable reason that can hold up against a challenge." *Id*.